# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE CHICK,<br><br>           Plaintiff,<br><br>     vs.<br><br>B. A. LACEY, et al.,<br><br>           Defendants. | ) 1:11cv01447 DLB PC<br>)<br>) ORDER FINDING CERTAIN CLAIMS<br>) COGNIZABLE AND DISMISSING<br>) REMAINING CLAIMS AND<br>) DEFENDANTS<br>)<br>)<br>)<br>) |

Plaintiff Wayne Chick ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action on August 29, 2011.  Pursuant to Court order, he filed a First Amended Complaint on October 9, 2012.  He names Sierra Conservation Center Correctional Officers B.A. Lacey and D. Wattle, Sgt. Tweedy, J. Kavanaugh, Associate Warden R. Quinn, Chief Deputy Warden Lackner and Inmate Appeals Chief D. Foston as Defendants.[1]

**A.     LEGAL STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

---

[1] On September 15, 2011, Plaintiff consented to the jurisdiction of the United States Magistrate Judge.

1

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Id. at 1949. This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

**B.   SUMMARY OF PLAINTIFF'S ALLEGATIONS**

On September 6, 2010, while Plaintiff was at dinner, Defendant Lacey conducted a cell search and left a "complete mess." Compl. 3. When Plaintiff returned from dinner, Defendant Lacey told him told him to gather all of his property and take it down to the podium. Plaintiff did and Defendant Lacey told him that he knew why Plaintiff was in prison and that he was going to get rid of all of his trash.

On September 7, 2010, Plaintiff heard Defendant Lacey tell other inmates that he was going to trash Plaintiff's cell and take his stuff.  That day, Defendant Lacey went to his cell and made Plaintiff take all of his property to the podium.  Defendant Lacey again disposed of pieces of Plaintiff's property, calling it trash and/or contraband.

On September 9, 2010, Plaintiff spoke to Sgt. Mutty about the harassment and threats from correctional officers, and Mutty told him that he would speak to Defendant Lacey about the issue.  Later that day, Defendants Lacey and Wattle made Plaintiff and his cell mate take their property to the podium.  They again disposed of personal property and told Plaintiff, in a loud and mean manner, that he was "a mentally ill dirty individual" and that he'd be going through the same search tomorrow.  Plaintiff became humiliated and was unable to sleep.

On September 10, 2012, Defendant Lacey had Plaintiff take his property to the middle of the dayroom, where all inmates could see it.  He searched Plaintiff's property and disposed of whatever he saw fit, despite Plaintiff's pleading and documented receipts.  Defendant Lacey was also allowing other inmates who work in the building to take what they wanted from Plaintiff's property.  That evening, Plaintiff was not allowed to shower and was sent back to his cell without a toothbrush or toothpaste.  He was not able to sleep due to fear.

During these searches, Defendant Lacey was slowing getting rid of Plaintiff's legal documents.  This caused Plaintiff to have a psychological breakdown and miss his court deadlines.

On September 11, 2010, Defendants Lacey and Wattle asked Plaintiff to remove his property from the room where it was placed the day before and take it to the podium.  While Plaintiff was doing this, Defendants Lacey and Wattle were making fun of Plaintiff and yelling derogatory names in the presence of other inmates.  During this search, Defendants disposed of Plaintiff's top and bottom dentures and religious artifacts.

On September 13, 2010, Defendant Lacey yelled at Plaintiff while he was in his cell and told him to bring his property down. The search was conducted in the same manner as previous searches and Plaintiff was again not allowed to shower.

On September 16, 2010, Defendant Lacey called Plaintiff in from the yard and told him to pack his property up and take it to the podium. Later in the day, Plaintiff went to dinner while his property remained at the podium. Defendant Lacey told Plaintiff that he had been waiting for him for 30 minutes so that he could search his property. Plaintiff alleges that the correctional officer running the cell control tower intentionally prohibited Plaintiff from coming out of his cell. That evening, Plaintiff was not allowed to pick up his psychiatric medication.

On September 20, 2010, Defendant Lacey called Plaintiff to the podium for the sole purpose of demoralizing, ridiculing and belittling Plaintiff in the presence of other inmates.

On September 23, 2010, Defendant Lacey did the same thing, but this time, he was yelling to other inmates that they should feel free to attack Plaintiff.

On October 14, 2010, Plaintiff told his psychologist that he was physically attacked by his cell-mate the prior week due to Defendant Lacey's actions.

Based on these facts, Plaintiff alleges that Defendants intentionally inflicted emotional distress on every opportunity they had and put his life in danger by revealing confidential information to other inmates. He also alleges that they their actions were deliberately indifferent.

As relief, Plaintiff requests that Defendants be ordered to compensate Plaintiff for the confiscated property for which he has receipts ($285.00), replace his dentures and produce his legal materials so that he can continue his appeal. Plaintiff also requests punitive damages

**C.    ANALYSIS**

    1.    <u>Defendants Tweedy, Kavanaugh, Quinn, Lackner and Foston</u>

Under § 1983, Plaintiff must link the named defendants to the participation in the violation at issue. <u>Iqbal</u>, 556 U.S. at 678-79; <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011,

1020-21 (9th Cir. 2010); Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934.  Liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 556 U.S. at 676; Ewing, 588 F.3d at 1235, and administrators may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr, 652 F.3d at 1205-08; Corales, 567 F.3d at 570; Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

      Here, Plaintiff has not alleged any facts against Defendants Tweedy, Kavanaugh, Quinn, Lackner or Foston, and they do not appear to be directly related to the events at issue.  Plaintiff was instructed on linkage in the first screening order, but he has failed to link these Defendants to any alleged violations.  Therefore, they must be dismissed without leave to amend.

      2.      Eighth Amendment

      The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

      Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th

Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Prison officials also have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

Plaintiff's allegations are sufficient to state an Eighth Amendment conditions of confinement claim against Defendants Lacey and Wattle. Plaintiff also states an Eighth Amendment failure to protect claim against Defendant Lacey. Plaintiff will be instructed on service by separate order.

    2.    <u>Intentional Infliction of Emotional Distress</u>

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §

1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Corales v. Bennett, 567 F.3d 554, 571 (9th Cir. 2009) (quotation marks omitted); Tekkle v. United States, 567 F.3d 554, 855 (9th Cir. 2007); Simo v. Union of Needletrades, Industrial & Textile Employees, 322 F.3d 602, 621-22 (9th Cir. 2003). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. Corales, 567 F.3d at 571; Tekkle, 511 F.3d at 855; Simo, 322 F.3d at 622

Plaintiff states a cognizable claim for intentional infliction of emotional distress against Defendants Lacey and Wattle.

## D.     **ORDER**

The Court finds that Plaintiff's First Amended Complaint states (1) Eighth Amendment claims; and (2) an intentional infliction of emotional distress claim against Defendants Lacey and Wattle. It does not, however, state any claims against Defendants Tweedy, Kavanaugh, Quinn, Lackner and Foston. Plaintiff has been given an opportunity to cure this deficiency, but he failed to do so. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). As explained above, Plaintiff will be instructed on service in a separate order.

Accordingly, IT IS HEREBY ORDERED that:

1. This action proceed against Defendants Lacey and Wattle for violation of the Eighth Amendment and intentional infliction of emotional distress; and

2. Defendants Tweedy, Kavanaugh, Quinn, Lackner and Foston are DISMISSED WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.

Dated:   **April 20, 2013**                             /s/ *Dennis L. Beck*
                                                                                    UNITED STATES MAGISTRATE JUDGE