# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE CHICK,<br><br>        Plaintiff,<br><br>    vs.<br><br>B. A. LACEY, et al.,<br><br>        Defendants. | 1:11cv01447 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT LACEY'S MOTION TO DISMISS<br>(Document 18)<br><br>THIRTY-DAY DEADLINE |

      Plaintiff Wayne Chick ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on August 29, 2011.

      On April 22, 2013, the Court screened Plaintiff's First Amended Complaint ("FAC") and found the following cognizable claims: (1) an Eighth Amendment conditions of confinement claim against Defendants Lacey and Wattle; (2) an Eighth Amendment failure to protect claim against Defendant Lacey; and (3) an intentional infliction of emotional distress claim against Defendants Lacey and Wattle. The Court dismissed all other claims and Defendants.

      On October 14, 2013, Defendant Lacey filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and for failure to exhaust. Plaintiff filed an opposition on

1

January 24, 2014, and Defendant Lacey filed a reply on January 28, 2014.  The motion is deemed submitted pursuant to Local Rule 230(l).

Defendant Wattle was served with the FAC on February 5, 2014, and filed a motion to dismiss the claims against him pursuant to Rule 12(b)(6) on February 26, 2014.  Plaintiff received an extension of time to file an opposition, though it appears that the arguments are the same, or substantially similar, to those made in the instant motion.

**I.      ALLEGATIONS IN FAC**

On September 6, 2010, while Plaintiff was at dinner, Defendant Lacey conducted a cell search and left a "complete mess," with his personal belongings thrown to the floor and mixed with those of his cellmate.  FAC 4.  Plaintiff alleges that it seemed liked the search was conducted with hatred and hostility.

When Plaintiff returned from dinner, Defendant Lacey told him told him to gather all of his property and take it down to the podium.  Plaintiff did so, and Defendant Lacey told him that he knew why Plaintiff was in prison and that he was going to get rid of all of his trash for him.

On September 7, 2010, Plaintiff heard Defendant Lacey tell other inmates that he was "going to trash [Plaintiff's] cell, and take his stuff."  FAC 5.  Plaintiff alleges that twelve other inmates, who also heard Defendant Lacey's threat, warned Plaintiff during the course of the day. That day, Defendant Lacey went to his cell and made Plaintiff take all of his property to the podium.  Defendant Lacey again disposed of pieces of Plaintiff's property, calling it trash and/or contraband.

On September 9, 2010, Plaintiff spoke to Sgt. Mutty about the harassment and threats from correctional officers, and Mutty told him that he would speak to Defendant Lacey about the issue.  Later that day, Defendants Lacey and Wattle made Plaintiff and his cell mate take their property to the podium for a search.  Defendants made Plaintiff and his cell mate clean up the cell, from top to bottom.  They again disposed of personal property and told Plaintiff, in a loud

and mean manner, that he was "a mentally ill dirty individual" and that he'd be going through the same search procedure tomorrow. That night, Plaintiff was "physically and psychologically humiliated." FAC 5. He was trembling and could not "sleep nor focus as the previous three nights." FAC 5. He states that he knew then that he had to seek help from someone who was not a correctional officer.

On September 10, 2010, Defendant Lacey sent a note to psychologist Katherine Robertson, stating that Plaintiff was a dirty, hoarding and unclean inmate. Plaintiff spoke to Dr. Robertson and she told him to write it all down.

Later that day, Defendant Lacey had Plaintiff take his property to the middle of the dayroom, where all inmates could see it. He searched Plaintiff's property and disposed of whatever he saw fit, despite Plaintiff's pleading and documented receipts. Defendant Lacey was also allowing other inmates who work in the building to take what they wanted from Plaintiff's property. That evening, Plaintiff was not allowed to shower and was sent back to his cell without a toothbrush or toothpaste. He was not able to sleep due to fear.

During these searches, Defendant Lacey was slowing getting rid of Plaintiff's legal documents. This caused Plaintiff to have a psychological breakdown and miss his court deadlines.

On September 11, 2010, Defendants Lacey and Wattle asked Plaintiff to remove his property from the room where it was placed the day before and take it to the podium. While Plaintiff was doing this, Defendants Lacey and Wattle were making fun of Plaintiff and yelling derogatory names in the presence of other inmates. During this search, Defendants disposed of Plaintiff's top and bottom dentures and religious artifacts. Plaintiff states that the confiscation of these items was a "major debilitation" of his emotional state of mind, as described by the attached notes of Dr. Robertson.

On September 13, 2010, Defendant Lacey yelled at Plaintiff while he was in his cell and told him to bring his property down. The search was conducted in the same manner as previous searches and Plaintiff was again not allowed to shower.

On September 16, 2010, Defendant Lacey called Plaintiff in from the yard and told him to pack his property up and take it to the podium. Later in the day, Plaintiff went to dinner while his property remained at the podium. After Plaintiff went back to his cell and waited, Defendant Lacey told Plaintiff that he had been waiting for him for 30 minutes so that he could search his property. Plaintiff alleges that the correctional officer running the cell control tower intentionally prohibited Plaintiff from coming out of his cell. That evening, Plaintiff was not allowed to pick up his psychiatric medication.

On September 20, 2010, Defendant Lacey called Plaintiff from his cell to the podium office for the sole purpose of demoralizing, ridiculing and belittling Plaintiff in the presence of other inmates.

On September 23, 2010, Defendant Lacey did the same thing, but this time, he was yelling loudly to other inmates that they should feel free to physically attack Plaintiff.

On October 14, 2010, Plaintiff told his psychologist that he was physically attacked by his cell-mate the prior week due to Defendant Lacey's encouragement. Plaintiff cites to a mental health progress note dated October 14, 2010, that states that Plaintiff was assaulted the prior week by his former cellie, and that he continues to complain of what he perceives to be unrelenting harassment by a correctional officer.

On October 21, 2010, Plaintiff again complained to Dr. Robertson that two different correctional sergeants were verbally threatening him. The progress note, referenced by Plaintiff and attached to the complaint, indicates that he complained of severe stress related to ongoing conflicts with certain custody staff who he believes are harassing him. Dr. Robertson noted that Plaintiff's mental state appeared to be deteriorating from the stress he is experiencing.

The attached mental health progress notes also indicate that beginning in December 2010, Plaintiff reported improvement in his stress and anxiety after the correctional officer with whom he was having trouble was transferred to another yard.

As relief, Plaintiff requests that Defendants be ordered to compensate Plaintiff for the confiscated property for which he has receipts ($285.00), replace his dentures and produce his legal materials so that he can continue his appeal. Plaintiff also requests punitive damages.

## II.     RULE 12(B)(6)

### A.     Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)) (quotation marks omitted); Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 996-97 (9th Cir. 2006); Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000). Further, although the pleading standard is now higher, the Ninth Circuit has continued to emphasize that prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. May 25, 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

B.     Prior Screening Order

On April 22, 2013, the Court issued an order indicating that it had screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and found that it stated numerous causes of action. The Court's conclusion was based upon the same legal standards as this 12(b)(6) motion.

Defendant cites to a decision from the United States District Court for the Southern District of California for the proposition that statutory screening is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion. Teahan v. Wilhelm, 481 F.Supp.2d 1115, 1119 (S.D. Cal. Mar. 28, 2007). The decision of another district court is not binding, but in any event, this Court's position is not that the existence of a screening order is a complete bar to a subsequent Rule 12(b)(6) motion. However, the legal standard for screening and for 12(b)(6) motions is the same, 28 U.S.C. § 1915A; Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012), and the screening order may not ignored or disregarded, Ingle v. Circuit City, 408 F.3d 592, 594 (9th Cir. 2005).

To the contrary, the existence of a screening order which utilized the same legal standard upon which a subsequent motion to dismiss relies necessarily implicates the law of the case doctrine, and as a result, Defendant is expected, reasonably so, to articulate the grounds for his 12(b)(6) motion in light of a screening order finding the complaint stated a claim. Ingle, 408 F.3d at 594; Thomas v. Hickman, No. CV F 06-0215 AWI SMS, 2008 WL 2233566, at *2-3 (E.D. Cal. May 28, 2008).

If the defendants, in a case which has been screened, believe there is a good faith basis for revisiting a prior determination made in a screening order, they must identify the basis for their motion, be it error, an intervening change in the law, or some other recognized exception to the law of the case doctrine. Ingle, 408 F.3d at 594 ("A district court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an

intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result.").

The duty of good faith and candor requires as much, and frivolous motions which serve only to unnecessarily multiply the proceedings may subject the moving parties to sanctions. Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1119 (9th Cir. 2000). Parties are not entitled to a gratuitous second bite at the apple at the expense of judicial resources and in disregard of court orders.  Ingle, 408 F.3d at 594 (The law of the case "doctrine has developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.") (internal quotation marks and citation omitted); Thomas, 2008 WL 2233566, at *3 (for important policy reasons, the law of the case doctrine disallows parties from a second bite at the apple).

Therefore, Rule 12(b)(6) motions which fail to acknowledge the prior procedural history and screening orders, and which fail to articulate the reasons for the motion in light of the prior relevant orders, implicate the law of the case doctrine, unnecessarily multiply the proceedings, and fall well below the level of practice which is expected in federal court.

With this standard in mind, the Court will now address Defendant's arguments.

C.   Analysis

   1.   *Eighth Amendment Claims- Physical Injury*

Defendant Lacey first argues that Plaintiff failed to allege an actual physical injury, and without such allegations, he cannot bring a claim for mental or emotional harm.  Plaintiff's cognizable Eighth Amendment claims against Defendant Lacey are based on conditions of confinement and failure to protect.

Defendant is correct that absent physical injury, a prisoner is barred from pursuing claims for mental and emotional injury. 42 U.S.C. § 1997e(e); Oliver v. Keller, 289 F.3d 623, 625-628

7

(9th Cir. 2002).  Defendant is also correct that the screening order did not specifically discuss actual injury.

In instances where the Court finds a cognizable claim, it often does not present a fully reasoned analysis as to why the facts are sufficient to state a claim.  In this case, the Court simply found that the facts stated a conditions of confinement claim against Defendants Lacey and Wattle, and a failure to protect claim against Defendant Lacey.

The conditions of confinement claim was not based on the search and alleged verbal harassment, as neither would qualify as a condition "devoid of legitimate penological purpose or contrary to evolving standards of decency. . ." Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Rather, the conditions of confinement claim was based on Plaintiff's allegations that he was not permitted to shower, that his dentures were taken and that he was denied his medication.[1]

The failure to protect claim was based on Defendant Lacey's alleged encouragement to other inmates to assault Plaintiff, and the subsequent assault.

It is clear from Plaintiff's request for relief that he seeks monetary damages against Defendants based on the alleged "inflict[ion] of emotional distress," "intentional[] inflict[ion] of psychological trauma" and "emotional trauma." FAC 10.  Indeed, the facts in the FAC revolve almost entirely on Plaintiff's alleged emotional distress and mental health treatment.  Although Plaintiff alleges that he was not permitted to shower, that his dentures were taken and that he was denied his medication, he does not point to any resulting physical harm.  Similarly, although Plaintiff states that he was physically attacked, there is no allegation of resulting physical harm.

Plaintiff argues that this claim was not brought under "the federal standard, but rather under the Court's supplemental jurisdiction." Opp. 2.  However, only Plaintiff's intentional infliction of emotional distress claim is brought pursuant to the Court's supplemental

---

[1] Defendant offers an argument as to why the deprivation of Plaintiff's personal property fails to state a claim. The Court did not find such a claim, however.

jurisdiction.  In any event, both Plaintiff's federal constitutional claim *and* his state claim are subject to federal pleading standards.

Plaintiff also points to the "totality of abuse," and contends that while any one incident may not rise to the level of a constitutional violation, the "totality of the facts presented in the FAC" are sufficient.  Opp. 5.  Again, however, regardless of whether Plaintiff points to one incident or many, the fact remains that Plaintiff has not alleged a physical injury and therefore cannot recover for emotional injuries under 42 U.S.C. § 1997e(e).

Plaintiff will be permitted to amend this claim.

### 2. *Eighth Amendment- Failure to Protect*

Next, Defendant Lacey argues that Plaintiff failed to establish a causal relationship between his alleged conduct and the attack by his cellmate.  Again, the Court did not provide a reasoned analysis on the failure to protect claim.

In the context of a deliberate indifference claim, a plaintiff must prove that the defendant's deliberate indifference was the actual and proximate cause of the deprivation.  Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  While direct, personal participation is not required, "the critical question is whether it was reasonably foreseeable that the actions of the particular . . . defendants would lead to the rights violations alleged to have occurred . . . ."  Wong v. U.S., 373 F.3d 952, 966 (9th Cir. 2004).

Defendant argues that Plaintiff fails to raise any causal link between his conduct and the alleged assault.  The Court agrees.  Plaintiff has not alleged a sufficient causal link between Defendant Lacey's statement on September 23, 2014, and an attack at least two weeks later by his cellmate.  Moreover, there is no allegation that the cellmate heard Defendant Lacey's alleged statement.

Plaintiff will be permitted to amend this claim.

       3.    *Intentional Infliction of Emotional Distress*

Finally, Defendant sets forth numerous arguments as to why Plaintiff's intentional infliction of emotional distress ("IIED") claims fails.

Turning to Defendant's substantive argument, Defendant first argues that Plaintiff has failed to allege compliance with the California Tort Claims Act ("Act"). The Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board generally no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Act. Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at 1239; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

Defendant is correct that Plaintiff has not alleged compliance with the Act. Plaintiff argues that an inmate is only required to exhaust his administrative remedies within the prison, and that compliance with the Act is not required to state a claim. He is incorrect. While Plaintiff does not need to file a claim relating to his federal constitutional claims, he is required to file a claim for his *state law* tort claim. In other words, when a state law claim is heard in federal court under the court's supplemental jurisdiction, state law administrative exhaustion requirements must be met.

Next, Defendant argues that Plaintiff's allegations do not establish the type of "extreme and outrageous" conduct necessary for an IIED claim. Defendant contends that Plaintiff is in a prison setting and that searches and/or confiscation of personal property is required for safety

and sanitation reasons.  However, simply because Plaintiff is in a setting where searches are often necessary does not, by itself, negate a finding at the screening stage that the alleged conduct is "extreme and outrageous."

Finally, Defendant argues that Plaintiff's allegations fails to allege that he suffered severe distress.  Defendant is correct that the screening order did not fully analyze the required elements in finding that Plaintiff stated a claim.  Defendant points to the definition of "severe emotional suffering" under California law, which is "emotional distress of such a substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it."  Skeels v. Pilegaard, 2013 WL 970974, *5 (N.D. Cal. 2013) (citing Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965, 1004 (1993).

Plaintiff's allegations, at this stage, are sufficient to meet this standard.  Plaintiff alleges a series of searches over the course of almost three weeks that he believes were motivated by hostility and hatred.  He alleges that he had psychological breakdown.  Moreover, the deterioration of Plaintiff's mental state is documented in the mental health notes attached to his complaint.  Accordingly, the Court finds no reason to depart from this conclusion in the screening order.

However, as explained above, Plaintiff has not alleged compliance with the Act and Defendant's motion should be granted on this ground.  Plaintiff will be permitted to amend this claim.

III. **EXHAUSTION**

The Court will not address the exhaustion arguments because it is dismissing the FAC with leave to amend.  Plaintiff is reminded that he should only amend claims that are exhausted, or claims for which an exception to exhaustion exists.

The Court also notes on April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) with

respect to the proper procedural device for raising the issue of administrative exhaustion. Albino v. Baca, No. 10-55702, 2014 WL 1317141, at *1 (9th Cir. Apr. 3, 2014) (en banc). Following the decision in Albino, Defendants may raise the issue of exhaustion in either (1) a motion to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear on the face of the complaint, or (2) a motion for summary judgment. Albino, 2014 WL 1317141, at *4 (quotation marks omitted). An unenumerated Rule 12(b) motion is no longer the proper procedural device for raising the issue of exhaustion. Id.

## IV.  CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED:

1. That Defendants' Motion to Dismiss based on Rule 12(b)(6) be GRANTED;

2. Plaintiff's FAC is dismissed with leave to amend;

3. An amended complaint must be filed within thirty (30) days of the date of service of the order adopting these Findings and Recommendations.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by

filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 10, 2014**                                   /s/ *Dennis L. Beck*
                                                              UNITED STATES MAGISTRATE JUDGE