# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE CHICK,<br><br>        Plaintiff,<br><br>  vs.<br><br>B. A. LACEY, et al.,<br><br>        Defendants. | 1:11cv01447 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION TO DISMISS<br>(Document 45)<br><br>THIRTY-DAY DEADLINE |

Plaintiff Wayne Chick ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on August 29, 2011.

**A.      PROCEDURAL HISTORY**

On April 22, 2013, the Court screened Plaintiff's First Amended Complaint ("FAC") and found the following cognizable claims: (1) an Eighth Amendment conditions of confinement claim against Defendants Lacey and Wattle; (2) an Eighth Amendment failure to protect claim against Defendant Lacey; and (3) an intentional infliction of emotional distress claim against Defendants Lacey and Wattle. The Court dismissed all other claims and Defendants.

1

Defendant Lacey filed a motion to dismiss on October 14, 2013.[1]

The Court granted the motion and dismissed the FAC with leave to amend on May 27, 2014. Specifically, the Court found that (1) Plaintiff failed to allege physical harm in conjunction with his Eighth Amendment claims; (2) Plaintiff failed to establish a causal relationship between Defendant Lacey and the alleged attack by his cellmate; and (3) Plaintiff failed to allege compliance with the California Tort Claims Act.

On August 7, 2014, after receiving an extension of time, Plaintiff filed his Second Amended Complaint ("SAC").

Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 18, 2014, prior to the Court's screening of the SAC. Plaintiff did not file an opposition and the Court therefore deems the motion ready for decision pursuant to Local Rule 230(l).

**B.    ALLEGATIONS IN SAC**

At the times of the events at issue, Plaintiff was incarcerated at Sierra Conservation Center ("SCC") in Jamestown, California. Defendants Lacey and Wattle were correctional officers at SCC.

On September 6, 2010, while Plaintiff was at the evening meal, Defendant Lacey conducted a cell search and left a "complete mess," with his personal belongings thrown to the floor and mixed with those of his cellmate. ECF No. 44, at 5.

After, Defendants had Plaintiff bring all of his personal property to the officer's podium, where they "rampaged" through his property and randomly removed and threw away items. ECF No. 44, at 5. The removed items included court transcripts, direct appeal briefs and notes related to his criminal appeal.

---

[1] Defendant Wattle had not been served at the time the motion was filed.

Defendant Lacey began to yell loudly, calling Plaintiff's name in front of the other inmates and using words and phrases "clearly intended to imply those inmates were free to physically attack" him. ECF No. 44, at 5-6. Plaintiff believes this was done with the intent to instill psychological trauma and physical fear.

On September 7, 2010, Defendant Lacey was working the pedestrian gate at the plaza. Plaintiff walked past the area and overheard Defendant Lacey telling a group of other inmates that he was "going to trash Chick's cell, and take his stuff." ECF No. 44, at 6. During the day, Plaintiff was warned by about twelve inmates of Defendant Lacey's intent to trash his cell. That day, Defendant Lacey had Plaintiff bring his property back to the podium. The officers "rampaged" through Plaintiff's property and randomly removed and threw away items. ECF No. 44, at 6. The removed items included court transcripts, direct appeal briefs and notes related to his criminal appeal.

On September 9, 2010, during the morning pill call, Plaintiff spoke with Correctional Sergeant Mutty about Defendants' harassment and threats. Mutty told Plaintiff that he would speak to them. After third watch began, Defendants had Plaintiff bring his personal property to the podium, where they again "rampaged" through his property and randomly removed and threw away items. ECF No. 44, at 6. The removed items included court transcripts, direct appeal briefs and notes related to his criminal appeal. After, Defendants, in a loud and demeaning manner, told Plaintiff that he was a mentally ill, dirty individual, and that tomorrow, he'd be going through the same procedure. That evening, Plaintiff was physically and psychologically humiliated. He was trembling and unable to sleep as a result of the prior harassment and psychological torture.

On September 10, 2010, Defendant Lacey sent a note to Katherine Robertson, Ph.D., stating that Plaintiff was a dirty, hoarding inmate. Plaintiff spoke with Dr. Robertson, who made a written record of their session.

Later that day, Defendant Lacey had Plaintiff bring all of his property to the podium. The officers again "rampaged" through his property and randomly removed and threw away items. ECF No. 44, at 7. The removed items included court transcripts, direct appeal briefs and notes related to his criminal appeal. Defendant Lacey then permitted other inmates to rifle through his property and take whatever items they wanted. Defendant Lacey eventually told Plaintiff to place the remainder of his property into a small storage room within the building. Defendant Lacey did not permit Plaintiff to shower and sent him back to his cell without a toothbrush or toothpaste. Plaintiff was unable to sleep due to fear.

On September 11, 2010, Defendants Lacey and Wattle instructed Plaintiff to remove his property from the storage room and bring it to the podium. While Plaintiff was doing this, Defendants Lacey and Wattle were making fun of Plaintiff, stereotyping him and yelling derogatory names in the presence of other inmates. During this search, Defendants disposed of Plaintiff's top and bottom dentures and religious artifacts. Plaintiff states that the confiscation of these items caused Plaintiff to experience a "debilitating emotional state" over a prolonged period of time. ECF No. 44, at 8.

On September 13, 2010, Defendant Lacey yelled at Plaintiff while he was in his cell and told him to bring his property down to the podium. Defendant Lacey again "rampaged" through his property and randomly removed and threw away items. ECF No. 44, at 8. The removed items included court transcripts, direct appeal briefs and notes related to his criminal appeal. That evening, Defendant Lacey prohibited Plaintiff from showering. This made him apprehensive because he was "becoming very 'rip' [sic] with body odor offensive to his cellmate." ECF No. 44, at 9.

On September 16, 2010, Defendant Lacey called Plaintiff in from the yard and told him to pack his property up and bring it to the podium. Defendant Lacey left Plaintiff's property exposed at the podium for several hours. Later in the day, Defendant Lacey approached

Plaintiff's door and yelled that had been waiting for him for 30 minutes so that he could search his property. That evening, Plaintiff was not allowed to pick up his psychiatric medication "as a direct result of Defendant Lacey's actions." ECF No. 44, at 9.

On September 20, 2010, Defendant Lacey called Plaintiff from his cell to the podium and proceeded to ridicule and belittle him in the presence of other inmates. Plaintiff believes that this was done for the sole apparent purpose of demoralizing him.

On September 23, 2010, Defendant Lacey did the same thing, but this time, he was yelling loudly to other inmates, including his cellmate, to encourage them to physically attack Plaintiff.

On or about October 7, 2014, Plaintiff was attacked by his cellmate as a direct result of the actions of Defendants Lacey and Wattle. This caused physical injury to Plaintiff. Plaintiff asserts that the denial of showers and personal hygiene items caused his body odor to deteriorate, which caused his cellmate to assault him.

On October 14, 2010, Plaintiff told his mental health provider that he was physically attacked by his cell-mate. Plaintiff cites to a mental health progress note dated October 14, 2010, that states that Plaintiff was assaulted the prior week by his former cellie, and that he continues to complain of what he perceives to be unrelenting harassment by a correctional officer.

Based on these factual allegations, Plaintiff asserts (1) an Eighth Amendment conditions of confinement claim because his dentures were confiscated, he was not permitted to shower for an extended period of time, and he was not given personal hygiene items; (2) an Eighth Amendment failure to protect claim based on Defendant Lacey's instigation of violence and resulting assault; and (3) intentional infliction of emotional distress.

For relief, he seeks compensatory damages.

**C.    Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)) (quotation marks omitted); Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Huynh v. Chase Manhattan Bank, 465 F.3d 992, 996-97 (9th Cir. 2006); Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).  Further, although the pleading standard is now higher, the Ninth Circuit has continued to emphasize that prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. May 25, 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

**D.    Analysis**

1.    Cognizable Injury

For each of Plaintiff's Eighth Amendment claims, he seeks damages for "severe emotional suffering and distress." ECF No. 44, at 10-11.  In fact, the allegations in his SAC revolve almost entirely on Plaintiff's alleged emotional distress and mental health treatment.

However, absent physical injury, a prisoner is barred from pursuing claims for mental and emotional injury. 42 U.S.C. § 1997e(e); Oliver v. Keller, 289 F.3d 623, 625-628 (9th Cir. 2002).  The requisite physical injury need not be significant, but must be more than *de minimus* for purposes of 42 U.S.C. § 1997e(e). Pierce v. County of Orange, 526 F.3d 1190, 1124 (9th Cir. 2008); Oliver, 289 F.3d at 628.

The Court previously dismissed Plaintiff's FAC because he did not allege *any* physical injury. Defendants now argue that the amendments in his SAC are not sufficient.

a. *Eighth Amendment- Failure to Protect*

This claim is asserted against Defendant Lacey based on Plaintiff's allegation that he instigated and/or encouraged violence, resulting in the October 7, 2010, assault. In amending his complaint, Plaintiff added an allegation that the assault caused "physical injury," and he makes numerous references to this "physical injury." ECF No. 44, at 10-12.

Defendants argue, and the Court agrees, that these bare assertions of physical injury are not sufficient to demonstrate more than *de minimus* physical harm. Despite the Court's prior analysis and instruction, Plaintiff does not describe his "physical injury" in any way, nor does he describe the alleged assault. Moreover, while Plaintiff reported being assaulted to his mental health provider, there is no explanation of the nature of any injuries. ECF No. 44, at 21. He also fails to include any medical records, or *any* records that describe any injuries. He submits an inmate grievance that was submitted after the alleged assault, but the grievance does not include any discussion of an assault or any resulting physical injury. ECF No. 49- 51.

To the extent that Plaintiff cites an inability to sleep, fear and "debilitating emotional state," these impacts are not physical in nature and cannot satisfy the physical injury requirement of section 1997e(e). See Chappell v. Fleming, 2014 WL 793986, *5 (E.D. Cal. 2014) (emotional harm, or fear of harm, is insufficient to state an Eighth Amendment claim).

Plaintiff's allegations are not sufficient to demonstrate that he suffered more than a *de minimus* injury, and he is therefore barred from recovering for emotional injuries under 42 U.S.C. § 1997e(e). Iqbal, 556 U.S. at 678 (a complaint does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement.") (internal citations omitted).

    b.  *Eighth Amendment- Conditions of Confinement*

  Plaintiff's conditions of confinement claim against Defendants Lacey and Wattle is based on his contentions that they prohibited him from showering "for an extended period of time," confiscated his dentures and denied "all personal hygiene items." ECF No. 10.

  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. Farmer v. Brennan, 511 U.S. 825, 847 (1994); Foster, 554 F.3d at 812.

  Plaintiff fails to state a conditions of confinement claim for two reasons. First, as discussed above, although Plaintiff alleges that he was not permitted to shower, that his dentures were taken and that he was not given personal hygiene items, he does not point to any resulting physical harm. Moreover, his claims of an inability to sleep, fear and "debilitating emotional state," are not physical in nature and cannot satisfy the physical injury requirement of section 1997e(e). See Chappell, 2014 WL * 5.

  Second, the deprivations underlying his claim are not "sufficiently grave," nor do they support a finding that Defendants "knew of and disregarded a substantial risk of serious harm." While the Eighth Amendment guarantees personal hygiene supplies, Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), the circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

  Here, although Plaintiff alleges the denial of showers for an extended period of time, his factual allegations show that he was denied a shower on two occasions. Similarly, although he

alleges that he was denied all personal hygiene items, his facts show that he was denied a toothbrush and toothpaste once, and that his dentures were confiscated once. These allegations do not rise to the level of an Eighth Amendment violation.

    2.    <u>Causal Link Between Defendants' Conduct and Alleged Violations</u>

Defendants next argue that Plaintiff has failed to allege a sufficient causal link between their actions and the alleged constitutional violations.

In the context of a deliberate indifference claim, a plaintiff must prove that the defendant's deliberate indifference was the actual and proximate cause of the deprivation. <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988). While direct, personal participation is not required, "the critical question is whether it was reasonably foreseeable that the actions of the particular . . . defendants would lead to the rights violations alleged to have occurred . . . ." <u>Wong v. U.S.</u>, 373 F.3d 952, 966 (9th Cir. 2004).

As to Plaintiff's failure to protect claim, the Court previously explained that he failed to allege a sufficient causal link between Defendant Lacey's statement on September 23, 2014, and an attack at least two weeks later by his cellmate. The Court also noted that there was no allegation that the cellmate heard Defendant Lacey's alleged statement.

Plaintiff's amendments fail to cure this deficiency. Although he now states that his cellmate was present during Defendant Lacey's statements, he again fails to establish that his statements were the actual and proximate cause of the assault. Plaintiff adds an allegation implying that the denial of showers led to body odor, which led to the assault. However, Plaintiff alleges that he was denied a shower on September 10, 2010, and September 13, 2010. The alleged assault occurred on October 7, 2010, almost one month later. Plaintiff does not allege that he was not permitted to shower during this time.


### 3. Intentional Infliction of Emotional Distress

In the prior Findings and Recommendations, the Court held that Plaintiff failed to allege compliance with the Government Claims Act ("Act"). Plaintiff has now allegedly submitted a claim pursuant to the Act, but Defendants contend that the submission does not correct the deficiency.

The Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board generally no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Act. Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at 1239; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

In attempting to cure the deficiency, Plaintiff attaches an August 1, 2014, letter to the California Victim Compensation and Government Claims Board. He states that he was not aware of the presentation requirement until Defendant Lacey raised the issue in the prior motion to dismiss. ECF No. 44, at 61. In his SAC, Plaintiff states that he is "in the process of exhausting" the claim by filing a late claim. ECF No. 44, at 12. However, as noted above, action on the claim, or rejection of the claim, is an element of the cause of action. Plaintiff's late attempt at presenting a claim is not sufficient.

Additionally, the Court notes that it would not exercise supplemental jurisdiction over his state law claim where he fails to state a federal claim, even if the state law claim deficiencies are

curable.  28 U.S.C. § 1367(c)(3); <u>Parra v. PacifiCare of Az., Inc.</u>, 715 F.3d 1146, 1156 (9th Cir. 2013); <u>Herman Family Revocable Trust v. Teddy Bear</u>, 254 F.3d 802, 805 (9th Cir. 2001).

### E. **Conclusion and Recommendation**

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion to dismiss be GRANTED and Plaintiff's SAC be DISMISSED WITHOUT leave to amend.  The Court has previously explained these deficiencies to Plaintiff, but he has failed to correct them.  Further leave to amend is not warranted given the scare nature of his amendments.  <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212-13 (9th Cir. 2012); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130-31 (9th Cir. 2000); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 2, 2014**                    /s/ Dennis L. Beck
                                                 UNITED STATES MAGISTRATE JUDGE